## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

DONALD EBRAHIMI,

               Petitioner,               Case Number: 2:17-13738
                                      HONORABLE SEAN F. COX

v.

JOSEPH BARRETT,

               Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY

Petitioner Donald Ebrahimi, through counsel, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. At the time he filed the petition, Ebrahimi was incarcerated at the Cooper Street Correctional Facility. He has since been unconditionally discharged from custody.[1] The petition challenges his convictions for two counts of assault with intent to do great bodily harm less than murder and three counts of assault with a dangerous weapon. He raises two claims for relief: that he was denied his rights of confrontation and due process and that insufficient evidence was presented to sustain his convictions. Respondent argues that a portion of Petitioner's Confrontation Clause claim was waived and that the claims are meritless. For the reasons set forth below, the Court denies the petition and denies a certificate of appealability.

---

[1] Ebrahimi's discharge does not defeat § 2254's "in custody" requirement because the requirement is satisfied as long as a petitioner was incarcerated at the time a petition is filed. *Spencer v. Kemna*, 523 U.S. 1, 7 (1998).

## I.   Background

Petitioner's convictions arise from an altercation at his home in Shiawassee County on July 27, 2012.  Petitioner resided with his wife, Rebecca, his twelve-year-old daughter from a previous relationship, the three children he and Rebecca share (who were then two-, four-, and five-years old), and his grandmother.  On the morning of July 27th, Petitioner became enraged when he realized that Rebecca had allowed him to oversleep for an appointment.  (ECF No. 6-8, PageID.650.)  Rebecca testified that Petitioner tore a clock off the wall and smashed it on the floor.  (*Id.* at 650-51.)  He also smashed Rebecca's phone into several pieces.  (*Id.* at 651.)  While Rebecca was holding their two-year old child, Petitioner pulled Rebecca's hair and screamed profanities at her.  (*Id.* at 653-54.)  The twelve-year-old daughter, E.E. took the other children to another part of the house.  (*Id.*)  Petitioner then told Rebecca she had to leave the house without the children and pushed her out the door.  (*Id.* at 657-59.)  Rebecca refused to leave.  (*Id.*)  Petitioner threw her to the ground.  (*Id.* at 662-63.)  He took off Rebecca's shirt telling her she and the children would have to leave the house naked.  (*Id.*)  Petitioner started choking Rebecca.  (*Id.* at 663.)  Petitioner became distracted by his grandmother, allowing Rebecca to free herself from his grasp.  (*Id.* at 663-64.)

Eventually, Petitioner said he would allow Rebecca, the children, and his grandmother to leave.  They were all piled into the minivan when Petitioner pulled the keys from the ignition.  (*Id.* at 668.)  Petitioner chased E.E. when she exited the van.  (*Id.* at 669.)  He hit her after she tripped and fell.  (*Id.* at 547-48.)  The rest of the family stayed locked in the van.

Petitioner retrieved a ball peen hammer and smashed the passenger window, sending glass flying in all directions.  (*Id.* at 675.)  The two- and five-year old girls were cut by the glass.  (*Id*. at 678.)  E.E. ran to a neighbor's house to call 911.  (*Id.* at 548.)  Petitioner allowed Rebecca to bring the injured girls inside the home to treat their cuts.  (*Id.* at 683-84.)  Petitioner retrieved a chef's knife and ran screaming through the house. (*Id.* at 685.)  He said he was going to find E.E. and cut her to pieces.  (*Id.)*  A short time later, police arrived.  (*Id.* at 690-91.)

Following a jury trial in Shiawassee County Circuit Court, Petitioner was convicted of two counts of assault with intent to do great bodily harm less than murder, Mich. Comp. Laws § 750.84, three counts of assault with a dangerous weapon, Mich. Comp. Laws § 750.82, and one count of interference with an electronic communication device, Mich. Comp. Laws § 750.540.  He was sentenced to 57 to 120 months for the two assault with intent to do great bodily harm convictions, 24 to 48 months for the three assault with a dangerous weapon convictions, and 550 days for the interference conviction.

Petitioner filed an appeal of right in the Michigan Court of Appeals, raising these claims:

I.      Defendant has a constitutional right to confront the witnesses against him which can only be infringed in very narrow circumstances justified by the facts of a particular case.  The trial court took no evidence and made no findings that infringement of Defendant's right of confrontation was necessary to protect an important state interest or necessary for the daughter to properly present her testimony.  Where the trial court failed to use the least intrusive means available and failed to make the requisite findings, did preserved constitutional error occur which the prosecution cannot show to be harmless?

3

II.    Constitutional requirements for evidence to support a criminal conviction set the burden of proof at beyond a reasonable doubt.  A failure to have such proof invalidates any conviction obtained in violation of these principles.  Both felony levels of assaultive crimes have very specific requirements that the Defendant intend the result stated in the element (a certain level of harm or battery with a weapon).  Where Defendant merely used a hammer to break a glass in an occupied vehicle and never verbalized a threat to inflict a particular harm in the presence of a victim, did the trial court err by denying Defendant's motion for directed verdict?

III.   Constitutional requirements for evidence to support a criminal conviction set the burden of proof at beyond a reasonable doubt.  A failure to have such proof invalidates any conviction obtained in violation of these principles.  The interference with a communication charge requires that an actual communication be obstructed, delay[ed], or prevented and does not prohibit simple destruction of a communications device.

IV.    The United States Supreme Court has held that a criminal sentence must be based on facts decided by a jury beyond a reasonable doubt.  In this case, the trial court made multiple scoring decisions and applied a sentence that was at the top of the guideline range.  Where the mandatory nature of the guidelines has been declared unconstitutional, is Defendant entitled to be resentenced based upon *People v. Lockridge*?

The Michigan Court of Appeals affirmed Petitioner's assault convictions, vacated his conviction for interference with an electronic communication device, and remanded for further proceedings consistent with *People v. Lockridge*, 498 Mich. 358 (2015).  *People v. Ebrahimi*, 2016 WL 555866 (Mich. Ct. App. Feb. 11, 2016).  Petitioner ultimately waived resentencing in the trial court.  *See* Dkt. # 235, *People v. Ebrahimi*, No. 324551.

Petitioner filed an application for leave to appeal in the Michigan Supreme Court, which raised the first two claims he raised in the Michigan Court of Appeals regarding the Confrontation Clause and sufficiency of the evidence.  The Michigan Supreme Court denied leave to appeal.  *People v. Ebrahimi*, 500 Mich. 889 (Mich. 2016).

4

Petitioner then filed the pending habeas corpus petition.  He raises these claims:

I.      Violation of the Sixth/Fourteenth Amendment right to confront the witnesses based on the use of a comfort dog and a screen during the testimony of a minor witness without the required findings as to an important state interest of a necessity for presentation of the witness' testimony.

II.     Violation of the Fourteenth Amendment right to have each element proven beyond a reasonable doubt based on the lack of proof of a specific intent to harm in the assaultive crimes.

Respondent has filed an answer in opposition, arguing that part of the Confrontation Clause Claim is waived and that both claims are meritless.

## II.    Standard

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under the AEDPA, a state prisoner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law

of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 408. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

"[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. Further, "a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of th[e Supreme] Court." *Id.*

A state court's factual determinations are entitled to a presumption of correctness on federal habeas review. See 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption with clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## III.   Discussion

### A.   Confrontation and Due Process Clauses

The trial court allowed Petitioner's daughter E.E., who was twelve at the time of the assault and 14 at the time of trial, to testify from behind a one-way screen. The screen, which

was described by the Michigan Court of Appeals as "small (two feet by two feet), prevented E.E. from seeing Petitioner but allowed Petitioner, the judge, and the jury to see her. Petitioner alleges that the use of the screen denied him his right to confrontation and to due process of law. He also challenges the presence of an emotional support dog for E.E. during her testimony.

The Sixth Amendment to the United States Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right...to be confronted with the witnesses against him." U.S. Const. amend. VI. The Confrontation Clause guarantees a criminal defendant "a face-to-face meeting with witnesses appearing before the trier of fact." *Coy v. Iowa*, 487 U.S. 1012, 1016 (1988). But that right may be compromised when "considerations of public policy and necessities of the case" warrant. *Maryland v. Craig*, 497 U.S. 836, 848 (1990) (quotation omitted). In *Maryland v. Craig,* the Supreme Court considered and affirmed the use of a one-way closed circuit television for a child witness. *Id.* The Supreme Court found it significant that the procedure employed preserved all of the other elements of the confrontation right: testimony under oath from a witness deemed competent, opportunity for contemporaneous cross-examination, and observation of the witness. *Id.* at 851. This procedure, the Court held, rendered the closed-circuit testimony "functionally equivalent" to live, in-person testimony. *Id.*

After discussing the Supreme Court's decisions in *Craig* and *Coy* and the Michigan Court of Appeals' decision in *People v. Rose*, 289 Mich. App. 499 (Mich. Ct. App. July 1, 2010*), the Michigan Court of Appeals rejected Petitioner's argument that the trial court failed

to identify the specific state interest served by allowing the screen and improperly based its decision that the victim would suffer emotional distress absent the screen only upon the prosecution's representations. The state court reasoned, in relevant part:

> Although the trial court never specifically stated what the "important state interest" was, the transcript makes clear that the trial court and the parties were well aware when discussing this issue that the important state interest was protecting the child from the trauma of testifying. The trial court and parties discussed the *Rose* decision and its criteria extensively.[2] We have no doubt that the trial court was aware that the important state interest at issue was protecting the child witness from the trauma of testifying, even if the trial court did not expressly "find" or state as much on the record.

> Defendant also argues that the trial court's finding that the screen was necessary to protect the victim from emotional distress was erroneous because it was based solely on representations made by the prosecutor. We acknowledge that in *Rose* the screened-witness's therapist testified that there would be emotional distress, whereas here the prosecutor stated facts supporting that conclusion. However, defendant never questioned the veracity of the assertion that the twelve-year-old would be in emotional distress, and never asked the court to require the prosecutor to call a witness to provide evidence regarding the distress, despite the prosecutor's offer to call the twelve-year-old's mother and take her testimony on the issue. Further, defendant's counsel conceded this point in making his arguments, stating "[o]bviously she's a young girl who is stressed out." Indeed, even defendant's own "outburst" during the discussion of the screen (where he stated "I don't care if I see her or not. I don't want her going through this") evidences that not using the screen would have been traumatic for the twelve-year-old. Given the above, we cannot say the trial court clearly erred in finding that the twelve-year-old would suffer emotional distress without the screen.

> _____
> [2]As this Court noted in *Rose*, the United States Supreme Court "has already held that the state has a compelling interest in protecting child witnesses from the trauma of testifying when the trauma would be the result of the defendant's presence and would impair the child's ability to testify." *Rose*, 289 Mich. App at 522.

*Ebrahimi*, 2016 WL 555866 at *4.

The trial court concluded that the screen was necessary to protect E.E. from the trauma of testifying in her father's presence. Notably, all other elements of the right of confrontation were protected. The Michigan Court of Appeals' conclusion that, under these circumstances, the prosecution provided sufficient justification for the use of a screen was not contrary to or an unreasonable application of Supreme Court precedent.

Petitioner also argues that the use of the screen violated his rights under the Due Process Clause because its use was prejudicial and inflammatory. He claims the screen undermined the presumption of innocence. The Michigan Court of Appeals held that use of the screen was not inherently prejudicial and that Petitioner failed to establish actual prejudice:

> Due process includes the right to be presumed innocent. *Estelle v. Williams*, 425 U.S. 501, 503; 96 S Ct 1691; 48 L.Ed.2d 126 (1976). For presumption of innocence claims, courts "look at the scene presented to jurors and determine whether what they saw was so inherently prejudicial as to pose an unacceptable threat to defendant's right to a fair trial; if the challenged practice is not found inherently prejudicial and if the defendant fails to show actual prejudice, the inquiry is over." *Holbrook v. Flynn*, 475 U.S. 560, 572; 106 S Ct 1340; 89 L.Ed.2d 525 (1986). If a procedure is inherently prejudicial, then the procedure must be necessary to further an essential state interest specific to that trial. *Id*. at 568–569.
>
> ***
>
> In *Rose*, after an extensive discussion of the contrasting authority as to whether the use of a screen for a child witness was inherently prejudicial, this Court held that it was not. *Id*. at 517521 ("Accordingly, we cannot conclude that the use of a screen – no matter what its size or composition may be and no matter how it was employed at trial – must in every case be presumed to prejudice the defendant."). Accordingly, defendant must show actual prejudice. *Id*. at 521.
>
> Here, as in *Rose*, defendant has not shown actual prejudice from the use of the screen. He asserts only that it "could only aggravate his ability to remain

9

focused and assists his attorney," but this conclusory assertion does not demonstrate actual prejudice. Further, there is no indication that the screen used in the instant case was any different than the one found proper in *Rose*. Given the above, we reject defendant's argument that the screening violated his right to due process of law.

*Ebrahimi*, 2016 WL 555866 at *4-*5.

There is no clearly established federal law establishing that the use of a screen to protect a child victim during testimony violates due process. Petitioner, nevertheless, may state a claim if he establishes that the procedure was so egregious that it resulted in a denial of fundamental fairness. The Supreme Court has defined the "category of infractions that violate 'fundamental fairness' very narrowly." *Dowling v. United States*, 493 U.S. 342, 352 (1990). Prior to E.E.'s testimony, the trial court explained the purpose of the screen to the jury. The trial court instructed that the screen should not be used to imply Petitioner's guilt or E.E.'s credibility. The trial court explained that the screen was being used to provide E.E. some general comfort in testifying *in general*, and should not impact the jury's determination of the truth or falsity of E.E.'s testimony. The state court was reasonable in concluding that the use of screen in this case was not inherently prejudicial and that Petitioner did not establish actual prejudice.

Petitioner also argues that the use of an emotional support dog violated his right to confrontation and due process. Respondent argues that this claim is waived and unexhausted. Prior to E.E.'s testimony, the prosecutor moved to allow an emotional support dog to accompany E.E. to the stand and remain there for the duration of her testimony. Defense counsel stated that the defense did not object to the dog accompanying E.E. *See* (ECF No.

6-7, PageID.446.)   On direct appeal, Petitioner also indicated he did not object to the presence of a canine advocate for his daughter.  (*Id.* at 933.)

Moreover, even if Petitioner did not waive this argument, it is meritless.  The use of a support dog did not infringe upon Petitioner's right to confront E.E.  Nor has Petitioner demonstrated inherent or actual prejudice.  According to the record, the prosecutor indicated that the dog would be kept inside the witness box and, once there, would not be visible to the jury.  There is no indication from the record before the Court that the dog caused a distraction or could even been seen in the witness box.  *See United States v. Gardner*, No. 16-CR-20135, 2016 WL 5404207 at *7-8 (E.D. Mich. Sept. 28, 2016) (collecting cases where support dogs have been allowed to accompany witnesses in criminal trials).

### B.    Sufficiency of the Evidence

Petitioner's next claim challenges the sufficiency of the evidence to support his convictions for assault with intent to do great bodily harm less than murder and for assault with a dangerous weapon.  Under Michigan law, "[t]he elements of assault with intent to do great bodily harm less than murder are: '(1) an attempt or threat with force or violence to do corporal harm to another (an assault), and (2) an intent to do great bodily harm less than murder.'"  *People v. Brown*, 703 N.W.2d 230, 236 (Mich. Ct. App. 2005) (footnote and emphasis omitted) (quoting *People v. Parcha*, 575 N.W.2d 316, 318 (1997)).  The elements of assault with a dangerous weapon under Michigan law are: (1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery.  *See Gardner v. Kapture*, 261 F. Supp. 2d 793, 804

11

(E.D. Mich. 2003)(citing *People v. Lawton*, 196 Mich. App. 341, 349 (1992)).

The Michigan Court of Appeals denied Petitioner's sufficiency of the evidence claim on direct review. First, with respect to the assault with intent to do great bodily harm conviction, the state court held:

> We reject defendant's argument that there was insufficient evidence to support a finding that he intended to inflict serious injury of an aggravated nature. "An actor's intent may be inferred from all of the facts and circumstances, and because of the difficulty of proving an actor's state of mind, minimal circumstantial evidence is sufficient." *People v. Fetterley*, 229 Mich.App 511, 517–518; 583 NW2d 199 (1998) (citations omitted). "Intent may be inferred from a defendant's use of physical violence." *People v. Dillard*, 303 Mich.App 372, 377; 845 NW2d 518 (2013). While an actual injury is not required, "the extent of any injury and the presumption that one intends the natural consequences of one's acts are both proper considerations for the jury." *Id.* at 378.
>
> At trial, defendant's wife Rebecca testified that after defendant coaxed her into returning to the house, he said "perfect, you're such a f—— idiot," and then attacked her. Once isolated, defendant grabbed and twisted Rebecca's left wrist, turned her around, grabbed her by her shirt, threw her to the ground, ripped off her shirt, got on top of her, and began choking her. He only stopped when a third person entered the room. From defendant's statements and his use of significant physical violence, a reasonable jury could conclude that defendant intended to do serious injury of an aggravated nature to Rebecca.
>
> We also concluded that defendant's argument relative to the twelve-year-old victim, which is actually nothing more than an attack on the victim's credibility, is without merit. At trial, the twelve-year-old read the statement she had hand-written for the police on the day of the incident. I n that statement, she said that defendant attacked her and hit her. At trial, she could no longer remember defendant hitting her that day but explained the circumstances surrounding the creation of the handwritten letter. Defendant even conducted a voir dire examination with regard to the letter, and he questioned her during cross-examination about it and her memory of the incident. Viewing the evidence in the light most favorable to the prosecution, a rational jury could infer that when defendant intentionally hit this 12-year-old girl, he intended to do serious injury of an aggravated nature.

12

*People v. Ebrahimi*, No. 324551, 2016 WL 555866, at *1-2 (Mich. Ct. App. Feb. 11, 2016).

The Michigan Court of Appeals also found sufficient evidence to support the assault with a dangerous weapon conviction:

> Defendant committed an assault when he smashed the window. He used the hammer as a dangerous weapon to commit the assault. Rebecca, who was inside the van, testified to the circumstances and what occurred from the perspective of the occupants of the van. And, given the testimony regarding everything that happened during that day, a reasonable jury could infer that defendant intended to injure or place the victims in reasonable apprehension of an immediate battery. Defendant's argument that proof is somehow lacking because none of the young children testified that they were in "apprehension" of a battery is wrong. The children's testimony that they actually experienced apprehension was not necessary, as it could be inferred by the jury.
>
> Defendant argues that he intended to harm the vehicle, as opposed to the occupants, and was just attempting to get inside the locked vehicle. However, defendant knew the victims were in the van, and a reasonable jury could conclude that defendant intended to harm the occupants of the van when he smashed the van window with the hammer. Viewing the evidence in the light most favorable to the prosecution, a rational jury could find defendant guilty beyond a reasonable doubt of the assault with a dangerous weapon charges.

*People v. Ebrahimi*, No. 324551, 2016 WL 555866, at *2 (Mich. Ct. App. Feb. 11, 2016).

The Michigan Court of Appeals' decision was not contrary to, or an unreasonable application of, Supreme Court precedent. On habeas review, "two layers of deference" apply to a sufficiency of the evidence claim. *McGuire v. Ohio*, 619 F.3d 623, 631 (6th Cir. 2010) (citing *Brown v. Konteh*, 567 F.3d 191, 204-05 (6th Cir. 2009)). First, the Court "must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Brown*, 567 F.3d at 205, (citing *Jackson v. Virginia*, 443 U.S.

13

307, 319 (1979) (emphasis in *Jackson*)). Second, if the Court were "to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, [the Court] must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id.*

Petitioner does not satisfy this two-level standard of review. He does not show that the state court's decision was unreasonable nor does he call into doubt any of the state court's factual determinations. In light of the deference owed to the state court's decision, the Court concludes that Petitioner fails to clear the "nearly insurmountable hurdle" for petitioners obtaining habeas relief on sufficiency-of-the-evidence grounds. *Davis v. Lafler*, 658 F.3d 525, 534 (6th Cir. 2008) (internal citation omitted).

## IV.    Certificate of Appealability

In order to appeal the Court's decision, Ebrahimi must obtain a certificate of appealability. To obtain a certificate of appealability, Petitioner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, Ebrahimi must show that reasonable jurists could debate whether the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). Courts must either issue a certificate of appealability indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3); Fed. R. App. P. 22(b); *In re Certificates of Appealability*, 106 F.3d 1306, 1307 (6th Cir. 1997). Here, jurists of reason would not debate the Court's conclusions. The Court

14

and denies a certificate of appealability.

## V.    **Conclusion**

For the reasons stated above, the Court DENIES the petition for a writ of habeas

corpus.  The Court DENIES a certificate of appealability.


s/Sean F. Cox
SEAN F. COX
UNITED STATES DISTRICT JUDGE

Dated: September 16, 2020